David A. Weeks, Jr., Law Office of Bart Durham, Nashville, for appellant.

Robert E. Kolarich, Adams, Taylor, Philbin, Pigue & Marchetti, Wm. Ritchie Pigue, Adams, Taylor, Philbin, Pigue & Marchetti, Nashville, for appellee.

## Herman BRADFORD, Appellant,

v.

## TRAVELERS INDEMNITY COMPANY, Appellee.

Supreme Court of Tennessee,
at Nashville.

Dec. 5, 1988.

## OPINION

FONES, Justice.

In this workers' compensation case, the plaintiff-employee appeals the chancellor's award of 35% permanent partial disability to the body as a whole for injuries he sustained on the job. The issue raised by the plaintiff is that the preponderance of the evidence supports a higher disability rating than 35% and we agree.

At the time of injury, plaintiff, Herman Bradford, was 55 years of age and employed as an ink mixer for CPS, Industries, a manufacturer of gift wrapping paper.

Defendant, Travelers Indemnity Company, was the workers' compensation carrier for CPS at the time of the accident.

On 25 April 1986, while plaintiff was in the process of lifting a pump weighing 75–80 pounds, he heard a pop in his back and fell to his knees. Plaintiff was sent to Williamson County Hospital and subsequently referred to Dr. Arendall, who treated plaintiff conservatively to no avail. Plaintiff was eventually referred to Dr. Thompkins, an orthopedic surgeon, whom he visited on 29 October 1986. Dr. Thompkins diagnosed that plaintiff's back pain was due to spondylolysis at L–5 and recommended surgery. During the second week of November 1986, plaintiff was hospitalized and underwent a fusion in his back from the fifth lumbar to the first sacral vertebra. Plaintiff returned to the same job as ink mixer for CPS in the spring of 1987. Plaintiff testified that he is unable to perform his job as he did prior to his injury and now requires a helper. The record reflects that the duties of ink mixer in day-to-day activities involve an extreme amount of lifting and pulling or pushing heavy pumps, barrels, pots and cylinders. Further, plaintiff testified that he is unable to sit for any extended periods of time. On his trip from work to home, which is 17½ miles, he has to stop and walk for approximately 7 or 8 minutes; "so I can make it home because I am so sore [by the] time I get there, I cannot sit up".

By deposition, Dr. Thompkins assigned plaintiff a permanent partial impairment of nineteen percent to the body as a whole based upon the AMA guidelines. Dr. Thompkins found plaintiff has one-half of the normal forward range of motion, approximately one-third of the normal backward range of motion, and about one-third of the normal range of motion to each side. The doctor stated that plaintiff was "not to participate in or be employed in jobs that require a lot of bending and lifting." He further added, "I feel that if he [plaintiff] went back to any type lifting that he may have a recurrence of his back pain."

Dr. George E. Copple, a clinical psychologist with a particular emphasis in occupational or vocational psychology was permitted to testify as a vocational expert. After administering a battery of tests, the doctor concluded that plaintiff "is not employable in the labor market" because of his age, and the fact that he is illiterate (he tested in the fourth percentile on the I.Q. test) and had worked at a single job as ink mixer for the past thirteen years. He noted that plaintiff's skills as an ink mixer were not transferable because plaintiff over the years had memorized the locations of the ink barrels and the amounts required to ascertain a certain color. Dr. Copple assessed plaintiff as 100% vocationally disabled based upon the foregoing and most importantly on the plaintiff's health disability which prevents him from working in jobs that require bending and lifting.

The standard of review in the case *sub judice* is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(c) (Supp.1988). The new standard of review differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases. *Corcoran v. Foster Auto GMC,* 746 S.W.2d 452, 456 (Tenn.1988); *Humphrey v. Witherspoon,* 734 S.W.2d 315 (Tenn.1987).

The issue on appeal is whether the trial court erred in its determination of the extent of disability awarded plaintiff. To determine the extent of vocational disability, the trial court considers "many pertinent factors, including job skills, education, training, duration of disability, and job opportunities for the disabled, in addition to the anatomical disability testified to by medical experts." *Employers Insurance Co. of Alabama v. Heath,* 536 S.W.2d 341, 343 (Tenn.1976). The courts must ask whether the employee's earning capacity in relation to the open labor market has been diminished by the residual impairment caused by a work-related injury and not whether the employee is able to return to the job he held at time of injury. *Holder v. Wilson Sporting Goods,* 723 S.W.2d 104, 108 (Tenn.1987). Most recently in *Corcoran,* this Court stated:

> That an injured worker is re-employed after an injury is a relevant factor to the

determination of the extent of vocational disability, regardless of whether the employee returns to the same employment or to some other work. Nevertheless, this factor is not controlling and is only one of many that must be considered. Despite the employee's return to any employment, if the employee's ability to earn wages in any form of employment that would have been available to him in an uninjured condition is diminished by an injury, then that is what is meant by vocational disability for the purpose of Workers' Compensation. The assessment of the extent of vocational disability is based on all pertinent factors taken together.

746 S.W.2d at 459.

Plaintiff argues that the trial court erred by allowing post-injury employment to be the controlling factor in the award of disability. The trial court stated at the close of the proof:

> In fixing the percentage of disability to the body as a whole I have taken into consideration the educational background of the plaintiff. I think that that's a significant feature in this case. He has a limited education and certainly that limits his potential on the job market, but I am taking also into consideration the fact that he has been working at his same job and that he has worked regularly and that his employer finds that he does have a skill, so I think that balances off some of the negative factors, and I find that his percentage of partial permanent disability is 35 percent.

It appears that the trial judge may have given more weight than appropriate to the fact that plaintiff returned to the same position with the same employer at a slight increase in salary. The trial judge found plaintiff to have a skill, but it appears that the work that plaintiff is able to perform for CPS is not a transferable skill. Plaintiff is a 55–year–old, who only attended school on rainy days up to or through the second grade. He is illiterate and can only do simple math skills of addition and subtraction on a second grade level. He has a fused backbone and is unable to do lifting. His skill as an ink mixer is specific to CPS, due to the fact that plaintiff has worked the past thirteen years for CPS as an ink mixer and has memorized the location and quantities of the ink required.

The employer argues that the 35% disability award was proper and relies upon such factors as that the plaintiff was able to return to the same job after his injury, that he works regular hours, including some overtime, and that he is considered a reliable and satisfactory employee by his supervisor. In *Holder*, we stated:

> Although Plaintiff did return to work for Defendant and was able to do most, if not all of his assigned duties, this has more to do with the nature of the job he did for Defendant than with Plaintiff's ability to compete on the open labor market, to which his legal disability is gauged.

723 S.W.2d at 108.

Clearly, plaintiff's ability to compete for employment in the open labor market has been diminished as a result of his work-related injury. Plaintiff's employment history reveals that he worked mainly in jobs that required physical labor. The evidence shows that plaintiff worked as a welder for a period of time before he became an ink mixer for CPS. It is difficult to say that a person with plaintiff's medical restrictions and background could go into today's work force and utilize a skill abandoned 15 years ago. After his injury, plaintiff had to sell his three acre farm which he had planted every summer, because he could no longer operate the equipment without considerable pain.

In view of plaintiff's age, education, medical restrictions and lack of transferable job skills, we conclude that the preponderance of the evidence at trial supports an increase in the extent of disability to 50%. The judgment of the trial court is modified accordingly. Costs are adjudged against defendant.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ., concur.