Johnnie Alice NEWMAN,
Plaintiff–Appellee,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY, Defendant–Appellant.

Supreme Court of Tennessee,
at Jackson.

March 12, 1990.

J. Thomas Caldwell, Ripley, for plaintiff-appellee.

Charles H. Barnett, Jackson, for defendant-appellant.

## OPINION

FONES, Justice.

The sole issue in this workers' compensation appeal is whether the evidence preponderates against the finding of the trial court that Johnnie Alice Newman sustained an eighty percent permanent partial disabil-

ity to the body as a whole. We modify the lower court's judgment because the preponderance of the evidence shows that the plaintiff suffered a fifty percent permanent partial disability to the body as a whole.

The plaintiff, Johnnie Alice Newman, has worked for the Wal–Mart store in Covington, Tennessee since 1979. The defendant, National Union Fire Insurance Company, is Wal–Mart's workers' compensation insurer. Before working for Wal–Mart, Plaintiff had several jobs. She worked in a laundry, farmed, was a laborer in a powder plant, filled mail orders at Sears, worked on an assembly line, and helped her husband repair cars. At Wal–Mart, Plaintiff has worked as a store clerk, as a freight handler, and in stockroom pricing and receiving.

On 3 December 1985, Plaintiff was a clerk in the automobile department of the store. As she was picking up an automobile battery, she was injured when her cervical disc ruptured. She immediately felt a pain in her neck and a numbness in her left hand.

In January of 1986, Dr. Stanley M. Patterson, a neurological surgeon, performed surgery to remove the disc. Dr. Patterson testified that he "removed the bone off the back side of the fifth [and] sixth level of the cervical spine on the left." During the operation, he "found a small cervical disc herniation and a large bone spur." As a result, Dr. Patterson "removed the cervical disc herniation and decompressed the nerve root from the bone spur."

Dr. Patterson further testified that Plaintiff has a ten percent permanent partial disability to the body as a whole and that Plaintiff should only work in a sedentary job. He prohibited Plaintiff from lifting anything weighing over twenty-five pounds. Plaintiff was also restricted from pulling or pushing heavy objects.

Plaintiff returned to work at Wal–Mart in August of 1986. She has performed "light" jobs since her return. She has been the greeting card department clerk, a checker, and a greeter (an employee who welcomes customers into the store). She also handled freight in the health and beauty aids department. Even though these jobs are less strenuous, Plaintiff has experienced a great amount of pain in her neck and shoulders. Her left arm and three fingers on her left hand are numb, and there is no feeling in the back of her left hand. Three witnesses at trial confirmed the fact that Plaintiff is in pain during and after work. Plaintiff takes Medeprin or Nuprin for the pain.

Plaintiff testified that she has difficulty picking up objects with her left hand, which makes it troublesome to work as a checker. A co-worker testified that Plaintiff uses one arm, presumably the right arm, to put purchased items in bags. Plaintiff also supports her left arm in her apron when she is a greeter to ease the pain.

Plaintiff was asked at trial why she continued to work when it caused her pain. She testified that it was necessary for her to work since her husband had a heart condition and was prohibited from working. She stated, "When you have to have bread on your table, and you're the only one that's able to work, and even though I'm not physically able, I still have to work and go as much as possible."

Her job performance after her return was rated as "good" by the store's manager and assistant manager. In fact, her salary increased. She was earning $5.40 per hour at the time of the injury and $6.05 per hour at the time of the trial. Also, she was working the same amount of hours per week before and after the injury. On the day before the trial, Plaintiff worked ten hours at the store.

This case proceeded to trial on 22 November 1988. The court found that Plaintiff suffered a permanent partial disability to the body as a whole and set the disability rating at eighty percent. Defendant brings this appeal and only challenges the disability rating.

Appellate review of findings of fact by the trial court is *de novo*, accompa-

nied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e). *See also Alley v. Consolidation Coal Co.*, 699 S.W.2d 147, 148 (Tenn.1985). "This standard differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315 (Tenn.1987). Under the material evidence rule, this Court was required to accept the findings of fact of trial courts if those findings were supported by any material evidence, *Anderson v. Dean Truck Line, Inc.*, 682 S.W.2d 900, 901–902 (Tenn. 1984); however, "[w]e are no longer bound by the findings of the trial court in these cases and now determine where the preponderance of the evidence lies." *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 456 (Tenn.1988).

In this case, we must determine what percentage of permanent partial disability the preponderance of the evidence supports. Dr. Patterson testified that Plaintiff sustained a ten percent permanent partial disability to the body as a whole. This rating, however, is an anatomical rating which is only one factor in measuring the vocational disability. The ultimate issue is the extent of Plaintiff's vocational disability. *See Corcoran*, 746 S.W.2d at 458. The assessment of this disability is based on many factors, including the employee's age, education, skills and training, local job opportunities, and capacity to work at the kinds of employment available in his disabled condition. *See Corcoran*, 746 S.W.2d at 459; *Roberson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn. 1986); and *Ware v. United States Steel Corp.*, 541 S.W.2d 107, 110–111 (Tenn. 1976).

Plaintiff was 58 years old at the time of the injury and had an eighth grade education. Her work experience before the injury was mostly limited to the service industry. She appears to be very skilled at her job at Wal–Mart. Plaintiff's injury limits her ability to lift any object weighing twenty-five pounds or more. As for local job opportunities, the record is devoid of evidence showing the employment positions that would have been available to Plaintiff but for her injury.

Plaintiff cites several cases, reported and unreported, in her brief, none of which support the chancellor's ruling that she sustained an eighty percent permanent partial disability to the body as a whole. In *Downs v. CNA Insurance Co.*, 765 S.W.2d 738 (Tenn.1989), the trial court found that the employee suffered a twenty-five percent permanent partial impairment to the left upper extremity. The employee appealed. The evidence showed that he sustained a twenty percent anatomical disability and that he could no longer perform the job that he had at the time of the injury. Also, the employee experienced difficulty in retaining other jobs after the injury; however, at the time of trial, he had a job and was earning the same salary as he was receiving prior to the injury. This court held that the preponderance of the evidence showed that the employee sustained a fifty percent disability. In *Bradford v. Travelers Indemnity Co.*, 762 S.W.2d 572 (Tenn. 1988), an orthopedic surgeon testified that the employee sustained a nineteen percent permanent partial disability to the body as a whole and that he was restricted from repetitive bending and lifting. In addition, a vocational expert testified that the employee was one hundred percent disabled because he was illiterate and his skills as an ink mixer were not transferable to another job. The chancellor found that the employee sustained a thirty-five percent permanent partial disability to the body as a whole, and the employee appealed. We held that the preponderance of the evidence proved that the employee sustained a fifty percent disability.

In both of these cases there was testimony concerning the employee's vocational disability. In *Downs*, the employee's em-

ployment prospects were shown to have been diminished by his repetitive unsuccessful attempts to work. In *Bradford,* a vocational expert testified that there were no employment positions available to the employee in the open market. In the present case, there is little proof of the extent to which Plaintiff's job opportunities in the market outside of Wal–Mart have been diminished by her injury.

The Workers' Compensation Act is a complete substitute for an employee's common law remedies against an employer for a work-related injury. Tenn.Code Ann. § 50–6–108. *See also Liberty Mut. Ins. Co. v. Stevenson,* 212 Tenn. 178, 182, 368 S.W.2d 760, 762 (1963). Under the Act, an employee is not required to prove fault on the employer's part, Tenn.Code Ann. § 50–6–103, and the employer may not resort to the common law defenses, such as contributory negligence. Tenn.Code Ann. § 50–6–111. In exchange for these employee advantages, the legislature limited employers' liability to a schedule intended to compensate employees for the loss or loss of use of a member or of the body as a whole. *See* Tenn.Code Ann. § 50–6–207; *Clanton v. Cain–Sloan Co.,* 677 S.W.2d 441, 443 (Tenn.1984); and *Liberty Mut. Ins. Co. v. Starnes,* 563 S.W.2d 178, 179 (Tenn.1978). As a result, employers are not liable for punitive damages. *Stevenson,* 212 Tenn. at 182, 368 S.W.2d at 762. In comparing the employee's claim for punitive damages with the Act's limited remedy, the Court in *Stevenson* adopted Professor Larson's view. The Court stated as follows:

> What will the new boundary on the elements of damage be, short of the entire range of tort elements, including pain and suffering, impotency, loss of childbearing capacity, loss of consortium, exemplary damages, and so on? It may be argued that refusal to recognize these items as compensable is unfair to the claimant, but this argument forgets that we are here dealing with the non-fault liability of an employer to an employee who may have well brought on the injury by his own personal negligence.... [T]here is no basis in the philosophy or purpose of workmen's compensation for making non-fault awards which bear no relation to earning capacity merely because the claimant has suffered some other kind of loss which arouses one's sympathy.

*Id.* at 183–184, 368 S.W.2d at 763 (quoting 2 Larson, *Workmen's Compensation Law* § 65.30).

There was evidence that Plaintiff's pain affected her earning capacity to some degree; however, we feel that the trial court was overly sympathetic to Plaintiff's situation. Upon a *de novo* review of the record, we find that the preponderance of the evidence rebuts the presumption of correctness of the chancellor's finding on the percentage of disability. Considering Plaintiff's disability, work restrictions, and skills, and all other factors, an award of eighty percent disability is excessive. We are of the opinion that the preponderance of the evidence supports a finding that Plaintiff sustained a fifty percent permanent partial disability to the body as a whole.

The judgment of the trial court is affirmed as modified. This case is remanded to the trial court for correction of the judgment as indicated above and for any other proceedings which may be necessary. Costs of this appeal are taxed to the appellee.

DROWOTA, C.J., and HARBISON, COOPER and O'BRIEN, JJ., concur.