**Paul Lane ROARK, Plaintiff/Appellant,**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant/Appellee.**

Supreme Court of Tennessee,
at Nashville.

July 23, 1990.

Jim H. Wachter, Madison, for plaintiff-appellant.

Alan M. Sowell, Nashville, for defendant-appellee.

## OPINION

O'BRIEN, Justice.

This is a workers' compensation action, appealed by the plaintiff below, in which the primary issue is the amount of the award for permanent partial disability. Plaintiff also questions the court's judgment in declining to leave the decree open for the payment of future medical expenses.

Plaintiff sustained an injury to his back while working in the course and scope of his employment. Treatment of the injury required surgery to perform a lumbar laminectomy. The chancellor found that Mr. Roark had sustained a fifteen percent (15%) permanent partial disability to the body as a whole and awarded benefits accordingly. It is insisted the evidence preponderates against the small award of permanent partial disability and that the trial court failed to give proper consideration to vocational disability.

On the issue of disability Dr. John Cameron McInnis, a treating physician, testified that Mr. Roark would retain a ten percent (10%) permanent physical impairment to the body as a whole based on the American Academy of Orthopedic Surgeons Guide to evaluating physical impairment. He further testified that Mr. Roark was referred to him by his employer on 17 November 1986. Treatment and observation indicated that plaintiff was suffering from a ruptured disc between the fourth and fifth lumbar vertebrae which appeared to be impinging on the nerve. As a result he was referred to Dr. Warren McPherson, a neuro-surgeon, who performed the surgery on his back. Dr. McInnis did not see plaintiff again until 29 October 1987 approximately ten months after his surgery. The history from plaintiff at that time indicated that the surgery was helpful in alleviating pain he had experienced in his right leg. He had returned to work six weeks after the surgery. He had avoided excessive bending, stooping or lifting but still was having some tingling in his right leg, some aching

pain in the back of his legs, and continued aching pain in his lower back. Physical examination on that occasion was extremely good. All testings were essentially normal with the exception that neurological examination of his lower extremity revealed an absent right ankle reflex which was indicative that the nerve had gotten bruised by a ruptured disc. The remainder of the neurological examination was normal. He did not see the patient again after that date.

Dr. McPherson performed the surgery on Mr. Roark's back on 31 December 1986. He was discharged from the hospital on 5 January 1987 and next seen by the doctor on 2 February 1987. At that time Mr. Roark had minimal pain and a little bit of stiffness in his back. He was placed on an exercise program with permission to return to his employment in three weeks, which he did. Plaintiff revisited the doctor on 16 June 1987 at which time he was doing reasonably well. He still experienced occasional "catches" in his back and had decreased his exercise program to one time a day. The doctor advised him to build that back to four or five times a day on the theory that it would help him. He next saw the plaintiff on 12 September 1988 and had not seen him since. He placed plaintiff's permanent partial physical impairment at ten percent (10%), having had a lumbar laminectomy with residual symptoms, and a complaint on September 12 of having some low back pain. His impairment rating was based on American Medical Association guidelines which take into account pain of neurological origin which is a subjective complaint.

Other evidence of disability came from the lay testimony of plaintiff, his wife and a fellow employee. Plaintiff testified that, although having been assisted by fellow employees, his work on an assembly line required him to do some lifting, pushing and pulling which worked on the lower part of his back and caused leg cramping and a lot of pain. He could not sit for long periods of time and would get leg cramps

and pain in the small of his back after he went to bed at night. This occurred several nights a week and required him to take a lot of Advil to get relief. He was not allowed to express an opinion on his ability to compete in the labor market on the basis that any such testimony would be speculative. He did testify that he could no longer enjoy working on automobiles because he could not crawl under them or bend over and work on them as he had previously. He could no longer use a push mower to keep his grass trimmed. His yard was hilly and the effort caused severe back and leg pains. This condition inhibited a fishing hobby because he could no longer walk up and down the creek banks. The condition of his back prevented him from dancing as he had done formerly. He further testified he was a high school graduate. He related his prior work history which included employment in a clothing store, and a number of years in the book-binding business which entailed a degree of heavy lifting. After high school he had no other specialized training in trades of any nature. His wife confirmed in general his physical impairment and the pain which he suffered in his back and legs.

■ The standard of appellate review in this case is de novo on the record, accompanied by a presumption of the correctness of the trial court's findings unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e). This standard of review differs from that previously provided and requires this Court to weigh in more depth actual findings and conclusions of trial judges in workers' compensation cases. *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315 (Tenn.1987). We are no longer bound by the findings of the trial court in these cases and now determine where the preponderance of the evidence lies. *Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452, 456 (Tenn.1988). In *Bradford v. Travelers Indemnity Co.,* 762 S.W.2d 572 (Tenn.1988), this Court stated some of those things to be considered by a trial court in determining the extent of vocational disability:

[T]he trial court considers "many pertinent factors, including job skills, education, training, duration of disability, and job opportunities for the disabled, in addition to the anatomical disability testified to by medical experts." *Employers Insurance Co. of Alabama v. Heath,* 536 S.W.2d 341, 343 (Tenn.1976).

In reference to this issue the court stated in *Corcoran,* supra:

" ... That an injured worker is reemployed after an injury is a relevant factor to the determination of the extent of vocational disability, regardless of whether the employee returns to the same employment or to some other work. Nevertheless, this factor is not controlling and is only one of many that must be considered. Despite the employee's return to any employment, if the employee's ability to earn wages in any form of employment that would have been available to him in an uninjured condition is diminished by an injury, then that is what meant by vocational disability for the purpose of workers' compensation. The assessment of the extent of vocational disability is based on all pertinent factors taken together." 746 S.W.2d at 459. See *Downs v. CNA Insurance Co.,* 765 S.W.2d 738, 741 (Tenn.1989).

■ On the other hand, it is incumbent upon the employee to carry the burden of proof to establish every essential element of his claim, including, if claimed, the permanency of his disability. *Lunsford v. A.C. Lawrence Leather Co.,* 189 Tenn. 293, 225 S.W.2d 66 (1949); *Mazanec v. Aetna Insurance Co.,* 491 S.W.2d 616, 619 (Tenn. 1973).

■ In this case we have defendant's testimony relative to his education and job training and his complaint of recurring and consistent pain. One of the doctors testified pain is a subjective complaint taken into account in the assessment of physical impairment under the AMA guidelines. Three years had transpired between the date of plaintiff's injury and the trial of

this matter in which he had worked regularly at the same employment in which he was engaged at the time of his injury. Each of the physicians testified that subsequent to the operative procedures plaintiff did not mention leg pain or cramps to either of them.

We conclude that the evidence does not preponderate against the trial court's judgment. Plaintiff has failed to show that his marketable talents, skills and physical ability have been diminished as a result of his work-related injury to the extent that he is unable to compete for employment in the open labor market.

█ The issue in reference to future medical expenses is well taken. Plaintiff is entitled under the provisions of T.C.A. § 50–6–204 to recover any reasonable and necessary medical expenses in the future which may be incurred as a result of a compensable injury. It was premature for the trial judge to limit or deny those benefits at the time of the trial. If or when appellant makes application for any such future medical expenses, the trial judge must at that time and under the evidence then adduced determine whether the employer or its insurance carrier is liable for their payment. See *Underwood v. Liberty Mutual Insurance Co.*, 782 S.W.2d 175, 176 (Tenn.1989).

The judgment of the trial court as modified in reference to medical expenses is affirmed. The costs on this appeal are adjudged against the appellant.

DROWOTA, C.J., and FONES, COOPER and DAUGHTREY, JJ., concur.