**Walter BAZNER, Plaintiff/Appellee,**

v.

**AMERICAN STATES INSURANCE COMPANY, Defendant/Appellant.**

Supreme Court of Tennessee,
at Jackson.

Nov. 18, 1991.

---

Erich W. James, Memphis, for defendant/appellant.

Tim Edwards, B.J. Wade, Glassman, Jeter, Edwards & Wade, Memphis, for plaintiff/appellee.

O'BRIEN, Justice.

This case, No. 1263000 R.D. in the Circuit Court of Shelby County, is one of three workers' compensation claims between plaintiff and L.D. Powell & Company, defendant's insured. Defendant has appealed a judgment directing payment of plaintiff's medical expenses, allegedly incurred as a result of treatment for an occupational disease.

In June 1987, Walter Bazner was diagnosed as having contracted the disease of asbestosis. It was determined the disease originated during the course of his employment as an insulator with L.D. Powell & Company, (L.D. Powell). In July 1987, Mr. Bazner filed a complaint in circuit court for workers' compensation benefits against L.D. Powell in Cause No. 113519–3 R.D. After an initial denial of liability, the employer, through its insuror, American States Insurance Company (American), entered into an agreement with Mr. Bazner stipulating that he had incurred a compensable disability as the result of an occupational disease. The stipulation stated in particular that as of 12 June 1987 Mr. Bazner became temporarily totally disabled as the result of asbestosis and was entitled to temporary total disability benefits from that date through 16 July 1987. After the latter date plaintiff would be entitled to either permanent partial or permanent total disability benefits. The agreement also stipulated that plaintiff's earnings qualified him for the maximum statutory weekly benefit rate in effect at that time.

In addition to its response to the complaint, defendant filed a third-party action against the second injury fund alleging that in December, 1980 plaintiff sustained a compensable accidental injury while working for the same employer. He had filed suit in Cause No. 81646–7 R.D. and received an approved lump sum settlement in the amount of $23,800 for a fifty percent (50%) permanent partial disability to the body as a whole.

A trial to determine the total compensability of Mr. Bazner's condition was held in July, 1988. At trial the judge found that he was totally and permanently disabled as a result of the occupational disease of asbestosis. An order was entered which provided that American pay Mr. Bazner $945 for five weeks of temporary total disability and $189 per week for 200 weeks of permanent total disability. The second injury fund was ordered to pay 195 weeks at $189 per week. Total payments awarded equalled the, then, maximum benefit of $75,600, to be paid in a lump sum. Additionally, the trial court ordered the payment of "all reasonable medical expenses incurred by plaintiff *through the date of the entry of this order.*" (Emphasis ours). Both American and the second injury fund paid the sums ordered by the trial court and neither appealed.

Not surprisingly, Mr. Bazner incurred additional medical expenses after the date of entry of the trial court's judgment. However, since the order specified payment of medical expenses only through the date of its entry, and made no provision as to liability for future medical expenses, American refused any further payment.

Based on American's denial of liability, in 1989 Walter Bazner brought the current suit, No. 126300 R.D., naming American as defendant, to recover the post-judgment

medical expenses. On 23 March 1990, the court granted a motion for partial summary judgment, requiring American to pay Mr. Bazner's post-judgment medical expenses, totalling $8,979. In a subsequent consent order, Count two of plaintiff's complaint was dismissed and final judgment entered as to Count one, encompassing the judgment for medical expenses, as noted heretofore. Defendant appealed. Upon plaintiff's motion to require a cash bond for appeal the trial judge required defendant to post an appeal bond in the amount of $12,-000.

Defendant has presented three (3) issues for review:

(1) It is insisted that an employee who has received a judgment for workers' compensation benefits is required to consult with the employer before incurring post-judgment medical expenses.

(2) It is argued that the judgment in Cause No. 113519–3 R.D. awarding total and permanent disability benefits in a lump sum, and medical expenses incurred through the date of entry of the order, is res judicata and bars a claim for post-judgment medical expenses asserted in a subsequent law suit.

(3) Error is charged to the trial court in requiring defendant to file a supersedeas bond on its appeal.

■ We find it appropriate to consider defendant's second complaint first, that is, whether plaintiff's demand for post-judgment medical expenses was cut off by the judgment in the original action which did not contain a provision for payment of future medical expenses.

■ We hold that it was not. It is plain in this record that the defendant, the plaintiff, and the trial court, all were aware, at the time of the 1987 trial, that Mr. Bazner's condition would not improve and that future medical expenses would necessarily accompany the natural progression of the disease. *See Adams v. American Zinc Co.*, 205 Tenn. 189, 326 S.W.2d 425 (1959). Additionally, the record reveals that the plaintiff introduced evidence at that trial indicating that his asbestosis condition would require future medical attention.

Defendant had every opportunity at that trial to refute its liability for future medical expenses and did not do so. In *Underwood v. Liberty Mutual Insurance Co.*, 782 S.W.2d 175, 176 (Tenn.1989), this Court noted that under the provisions of T.C.A. § 50–6–204 an employee is entitled to recover any reasonable and necessary medical expenses in the future which are incurred as a result of a compensable injury. If and when application is made for any such future medical expenses, the trial judge will at that time and under the evidence then adduced have to determine whether the employer or its insurance carrier is liable for the payment of such expenses. We reiterated that rule in *Roark v. Liberty Mutual Insurance Co.*, 793 S.W.2d 932, 935 (Tenn.1990). However, we think the better practice is that, an application made for post-judgment medical expenses should be made by petition in the original action in order that the records of all proceedings in the cause are before the court when such an award is requested.

In response to defendant's assertion that an employee is required to consult with the employer before incurring post-judgment medical expenses, this Court clearly stated the procedure to be followed in *Greenlee v. Care Inn of Jefferson City*, 644 S.W.2d 679 (Tenn.1983). At page 680, 644 S.W.2d, the Court remarked:

"Though the statute is not entirely clear about the requirement of notice, the intention of the legislature is to allow the employer the opportunity to provide free necessary medical attention to the injured employee. Certainly, if the employer is not apprised of employee's needs for medical attention, the employer cannot provide for that attention. Even though the employee may have given notice to the employer concerning some needed treatment in the past, we think the better rule is that the employer be given an opportunity to provide for the treatment each time the employee reasonably requires additional treatment. . . .

The legislature has paired the employer's duty to pay with the right to designate a group of physicians from which the employee may choose. This right allows the employer a chance to select physicians whose reputation and expertise are known to the employer. Such a procedure has the effect of reducing the chances of a dispute over the reasonableness of charges or over the competence of the attending physician. The direct result of all this is that the employee's medical needs are more efficiently provided for."

The *Greenlee* rule was reaffirmed in *U.S. Fidelity and Guaranty Co. v. Morgan*, 795 S.W.2d 653, 656 (Tenn.1990), a case in which future medical expense was in dispute. The facts closely paralleled those in this case. The Court said:

"Defendant further takes issue with the judgment of the trial judge that defendant pay any future medical expense that may be incurred in necessary treatment of plaintiff's 1985 injury and resulting disability. Defendant insists there is no evidence to justify this order. We would note that a fair reading of the testimony of Dr. Burkhart indicates that there is a good possibility that Mr. Morgan will incur future medical expenses in treatment of the injury of August 28, 1985. We would also point out that defendant is protected against unreasonable and unnecessary future medical charges by the requirement that plaintiff must show a direct causal relationship between the need for medical treatment and plaintiff's on-the-job injury, and the further requirement that the defendant be given the opportunity to provide the treatment each time plaintiff reasonably requires additional treatment."

In our analysis of this issue we first note that T.C.A. § 50–6–102(a)(4) and T.C.A. § 50–6–204, each recognize that occupational diseases arising out of and in the course of employment are synonymous with "injury" and "personal injury" for the purposes of the Workers' Compensation Act. Therefore, an employee, exposed to either condition, is entitled to the benefits provided for in T.C.A. § 50–6–204, including payment for future medical expenses incurred in necessary treatment for injury or disability in appropriate cases. Applying that principle to the issue before us, we note that there is no transcript or statement of evidence in this case. It was settled by stipulation that Mr. Bazner had incurred a compensable disability as the result of an occupational disease. There was never any occasion for defendant to submit to the plaintiff a designated list of three or more physicians from which he could make a selection. The medical evidence in the record is the deposition of Dr. Emmel Golden which indicates that Mr. Bazner first sought treatment from his family physician who referred him to Dr. William Light, an internist. Dr. Light made a presumptive diagnosis of asbestosis and referred Bazner to Dr. Golden, a thoracic specialist. In order to rule out lung cancer Dr. Golden had a surgical biopsy performed by Dr. Todd Robbins, a thoracic surgeon. Dr. Golden stated that the plaintiff would be required to return annually for pulmonary function studies and a yearly chest x-ray. It was his opinion that Bazner's condition would worsen and that he had an increased susceptibility or likelihood of developing cancer. Appellant was aware of all of the foregoing at the time the settlement was made. All of the medical expenses incurred by plaintiff were paid, and apparently accepted as reasonable. No objection was made to the doctors whose services were utilized by defendant in the course of his examination, diagnosis and treatment. A few months after the settlement Mr. Bazner began to suffer chest pains and breathing problems. He returned to see Dr. Light, who put him in the hospital for tests. Under the circumstances, it appears to us that this was a logical choice. In *Greenlee*, supra, p. 680, we recognized that there may be circumstances which would relieve the employee of a duty to give notice for seeking treatment of an occupational injury. Whether an employee is justified in seeking additional medical services to be paid for by the employer without consulting the employer depends on the circumstances of each case.

See *Dorris v. INA Insurance Co.,* 764 S.W.2d 538, 541 (Tenn.1989). We conclude the conduct of Mr. Bazner in soliciting further medical attention from Dr. Light was reasonable and justified under the facts existing in this case.

■ Defendant has suggested several other options, available to plaintiff to enforce his right to future medical expenses, including action to alter or amend the trial court's judgment, a new trial, appeal, or a motion to correct the judgment. None of these were required in this case. Plaintiff is entitled to future medical expenses under the Workers' Compensation statutes, specifically T.C.A. § 50–6–204. We reiterate that the rule stated in *Greenlee* is applicable henceforth in cases of this nature with the additional requirement that any application made for post-judgment medical expenses are to be made by petition in the original action in order that the records of all proceedings in the cause are before the trial judge to facilitate his determination that such an award may be justified.

Defendant complains about the requirement made in the trial court that it file a supersedeas bond as a condition precedent to perfecting its appeal. It seems to us there is more heat than light in much of the proceedings in this litigation. Shortly after the settlement was reached and paid in Cause No. 113519 R.D., plaintiff filed a third-party action in the U.S. District Court against a large number of manufacturers utilizing asbestos in their products. On 15 November 1988 defendant filed an intervening complaint in the products liability action to protect its subrogation claim of $48,956.44 pursuant to T.C.A. § 50–6–112. In the case before us plaintiff not only sought recovery of post-judgment medical expenses, but asked the trial court to require defendant to pay a pro-rata share of expenses attendant to the products liability action in federal court. This issue has not been finally litigated. Sometime in the interval, the date is uncertain, plaintiff settled his cause of action against three of the defendants in the federal court case for a total of $17,700. American did not receive any part of that settlement in satisfaction of its subrogation lien. It filed a motion in this action for set-off against plaintiff's claim for medical expenses. It refused to pay any of the medical expenses ordered by the Court until the set-off claim was settled. As a result plaintiff filed a petition for contempt against the defendant. American filed its notice of appeal. Plaintiff in turn filed a motion to require a cash bond in the total amount of the judgment, interest and costs. The motion was granted, bond was posted and the appeal was taken. This is where the matter now stands.

■ In accordance with T.R.A.P. 24, defendant designated that portion of the record it deemed necessary to effect its appeal. It did not include a transcript of the hearing on the motion to require a cash appeal bond. The order of the trial judge granting the motion does not contain any findings of fact or statement of his reason for requiring the bond. We first observe that defendant is not entitled to a set-off against its liability for medical expenses. These expenses are an obligation on its part according to the statute. Nor, is plaintiff entitled, in this action, to have the defendant assume a pro-rata share of the expenses and fees incurred in the products liability case. That suit is filed in federal court and it is there he must seek relief if any is to be had. The same is true of the defendant. It must pursue its right of subrogation in that cause of action in accordance with T.C.A. § 50–6–112.

■ In summary, we hold that Mr. Bazner's claim for future medical expenses is not barred by the prior judgment entered in Cause No. 113519 R.D. He is entitled to receive all appropriate future medical care and treatment necessary upon compliance with the procedures stated in this opinion. The issue of the requirement of a supersedeas bond is moot. Due to the inadequacy of the record we are not able to rule further on that issue. The case is remanded to the trial court for such other and further proceedings which may be required in reference to future medical payments and related issues. In view of the unusual cir-

cumstances of this case the costs of the appeal are divided equally between the parties.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, Justice, concurring.

I agree with the result reached by the majority in this case. I write separately only to point out that once it has been determined that the plaintiff is entitled to receive future medical benefits, the case is thereafter controlled by *Goodman v. Oliver Springs Mining Co.*, 595 S.W.2d 805 (Tenn.1980). There we held, as a matter of policy, that an employer should not be allowed to force an employee to change physicians once treatment of a progressive occupational disease has begun, because continuity of health care under such circumstances is in the best interest of both the employer and the employee. *Id.* at 808–809.

Because Walter Bazner suffered from a progressive occupational disease, for which he sought continuing treatment from the same physician, the facts in this case are distinguishable from those in *Greenlee v. Care Inn of Jefferson City*, 644 S.W.2d 679 (Tenn.1983), cited repeatedly in the majority opinion. The injury in that case was the result of an accident, for which the plaintiff was initially awarded medical expenses. When faced with a post-judgment request for payment of "additional medical expenses," the Court was concerned about Mabel Greenlee's failure to seek authorization from her employer for additional treatment from a different doctor, because, among other things, there was no proof that the additional expenses she incurred had actually resulted from the original injury. *Id.* at 680. There is no such dispute here—as the majority indicates, everyone connected with this case knew that Walter Bazner's health would continue to deteriorate as the result of his injury and that he would require long-term medical attention. For Bazner, the resulting medical expenses were "continuing" rather than "additional," in the sense that the latter term was used in *Greenlee.*

Thus, while I concur in the result reached by the majority, I believe that it would be unfortunate if the majority's reliance on *Greenlee* were taken to mean that a victim of a progressive occupational disease is not entitled to remain in the uninterrupted care of his or her treating physician. That right was established over a decade ago in *Goodman, supra,* and nothing we do in this case today should, in my judgment, be interpreted to disturb the sound policy rule laid down in that earlier decision.