**Debora Joe CARTER, Plaintiff/Appellee,**

v.

**SHONEY'S, INC., Defendant/Appellant.**

Supreme Court of Tennessee,
at Nashville.

Dec. 28, 1992.

Garry K. Grooms, Farris, Warfield & Kanaday, Nashville, for defendant/appellant.

David Day, Cookeville, for plaintiff/appellee.

**ORDER**

PER CURIAM.

This case is before the Court upon the entire record, including the Order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of

fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved and published; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Before DROWOTA, J., and JOE C. LOSER, JR. and WILLIAM H. INMAN, Special Judges.

## MEMORANDUM OPINION

Filed December 1, 1992

WILLIAM H. INMAN, Special Judge.

This appeal[1] arises from a somewhat unusual decretal provision which provides that the "plaintiff shall be allowed to receive continued medical treatment from Dr. Roseanne Ellis with eight visits every three months", and "if the plaintiff should require treatments in excess of this amount, she shall consult the designated physician as outlined above...."

Dr. Ellis is a chiropractor. The appellant takes considerable umbrage at the quoted provision, and presents for our review four issues, the thrust of which questions the statutory authority of the trial court, in effect, to order chiropractic care for the appellee for the remainder of her life. We modify the judgment to give proper effect to the provisions of the workers' compensation laws respecting future medical care.

## II

The plaintiff was employed as a waitress. She was injured on July 3, 1990 as a result of a fall during the course and scope of her employment. After first refusing medical treatment, she was treated later in the day by an emergency room physician, who referred her to a general practitioner. Two weeks later she sought chiropractic treatment from Dr. Ellis, who insisted that she first obtain authorization for treatment from her employer. The store manager authorized the treatment and Dr. Ellis began physical therapy and other symptomatic treatment of the plaintiff. A CT scan revealed a ruptured intervertebral disc at the C5–6 level. Dr. Ellis thereupon referred the plaintiff to Dr. Vaughn Allen, a neurosurgeon practicing in Nashville.

The Employer initially objected to treatment by Dr. Allen, and thereafter furnished the plaintiff a list of three neurosurgeons one of whom she was to consult for further treatment for her injury. Dr. Ellis was notified that she was no longer authorized to treat the Employee, and that it would accept no further billings from her after October 29, 1990.

The plaintiff filed a motion to compel the Employer to pay for medical treatment. On January 9, 1991, the Employer agreed that it would pay for the past treatment by Dr. Ellis, and authorized the plaintiff to be treated by Dr. Allen.

Dr. Allen examined the plaintiff on November 20, 1990. He found that she had a central disc tear at C5–6, but that her physical examination was otherwise negative. He found that she had a very mild loss of range of motion of her neck, but that her neurological exam was "absolutely normal." He testified that the plaintiff did not require surgery, that she had reached maximum medical improvement from her injury, and that she could return to work as a waitress at Shoney's. Dr. Allen prescribed no further physical therapy or prescription medication and he did not refer the plaintiff back to Dr. Ellis for further chiropractic treatments, although he, in effect, conceded that such treatment might be indicated.

After the examination by Dr. Allen, the plaintiff elected not to consult any of the neurosurgeons mentioned in the panel of physicians, but instead returned to her chiropractor, who continued to treat her. Although Dr. Ellis released the plaintiff on

1. This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with Tenn.Code Ann. § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law.

March 6, 1991, she nevertheless, and somewhat anonymously, continued to treat her through the date of trial, seven months later.

### III

The plaintiff described in considerable detail the difficulties she experiences in day-to-day activities on the job as a waitress and at her home. The trial court found that she had a permanent partial disability of fifty-five (55) percent to her whole body, and since this finding is not questioned on appeal we deem it unnecessary to discuss her testimony at length. Most of her testimony, certainly the thrust of it, was given over to complaint of pain arising from any physical activity. She returned to Shoney's in March, 1991.

### IV

When asked about the necessity of future treatment, Dr. Ellis responded that Mrs. Carter should continue a home-exercise program with physical therapy to reduce the amount of inflammation and pain; that she can "maybe go two or three weeks with the pain level until the toxins in the muscles accumulate and produce a state of ischemia or pain due to oxygen deprivation and she requires some other form of intervention other than just home management. It seems that every two or three weeks she's in the state ready for some intervention."

### V

The standard of review is de novo on the record with a presumption of correctness unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e)(2): *Lollar v. Wal–Mart Stores, Inc.,* 767 S.W.2d 143 (1989).

### VI

■ The appellant argues that the plaintiff "abandoned the medical care" which it provided her, since she never consulted any of the neurosurgeons on the list furnished to her, but instead "sought and obtained authorization" to be treated by Dr. Allen and thereafter returned to Dr. Ellis for continued chiropractic treatment.

The apparent difficulty with this argument is to be found in the fact that the chiropractic treatment was expressly authorized by the employer. Were it not for this undisputed fact, we would agree that T.C.A. § 50–6–204(a), which provides for the designation of a group of three or more physicians, controls the issue. The cases relied upon involve instances where the employee rejected medical treatment, and are thus inapposite to a resolution of the issue presented here. The appellant essentially, and in hindsight, is seeking judicial absolution for its earlier asserted misjudgment in approving chiropractic treatment by Dr. Ellis. In the absence of evidence directed specifically to the issue we cannot arbitrarily order that chiropractic treatment be terminated. Superimposed upon this conclusion is the testimony of Dr. Allen, the neurosurgeon, that Dr. Ellis provides a "very good basis physical therapy", and "I think that is what would be required, ultra sound, diathermy, massage therapy, things of that nature if she were to have a flare-up."

### VII

■ The appellant next argues that if the plaintiff justifiably "abandoned medical care offered her", she nevertheless failed to show that continuing chiropractic treatments were reasonably necessary within the meaning of T.C.A. § 50–6–204. Dr. Allen is quoted as testifying that "he saw no need" to refer the plaintiff back to Dr. Ellis. A careful reading of his testimony indicates that while he did not specifically refer her, Dr. Allen advised her respecting neck exercises and to stay physically fit, and that "I would [NOT] object to chiropractic treatment. . . ."

His previously quoted statement that physical therapy would be required, together with ultra sound, diathermy, and massage therapy, and that Dr. Ellis provides a "very good physical therapy", is relevant to the point. Given this testimony, we are unable to find that the evidence preponder-

ates against the judgment that continued chiropractic treatments were necessary.

The appellant argues, as an adjunct, that if the trial court justifiably found continuing chiropractic care to be reasonably necessary, the Court nevertheless erred in denying it the right to select the health care provider, as provided for by T.C.A. § 50–6–204(a)(4):

> ... the employer shall designate a group of three or more reputable physicians.... from which the injured employee shall have the privilege of selecting ... the attending physician ... The above listing of physicians ... may include doctors of chiropractic within the scope of their licenses.

■ The appellee responds that the employer waived the privilege afforded by this statutory provision when its manager, upon specific request, approved the employment of Dr. Ellis. Under the facts of this case, we are constrained to a partial agreement with this argument.

The decretal provision authorizes Dr. Ellis to administer chiropractic treatments to the employee for the rest of her life upon the assumption that she will minimally require eight treatments each three months. We can find no factual or legal basis in this record for such divination, and the initial approval of Dr. Ellis for the treatment of the employee should not be construed as permanently establishing the relationship of physician-patient between them. Conversely, it would be onerous indeed to require the employee to petition the court each time she reasonably perceived the need for chiropractic treatment.

In *Greenlee v. Care Inn of Jefferson City*, 644 S.W.2d 679 (1983), relied upon by the appellant, the plaintiff sought to recover certain post-judgment medical expenses. One of the reasons for the denial of recovery was the failure of the plaintiff to give the defendant notice of the prospective incurrence of these expenses. This Court held

"Though the statute is not entirely clear about the requirement of notice, the intention of the legislature is to allow the employer the opportunity to provide free necessary medical attention to the injured employee. Certainly, if the employer is not apprised of the employee's need for medical attention, the employer cannot provide for that attention. And even though the employee may have given notice to the employer concerning some needed treatment in the past, we think the better rule is that the employer be given an opportunity to provide for the treatment each time the employee reasonably requires additional treatment.

> Such a procedure has the effect of reducing the chances of a dispute over the reasonableness of charges or over the competence of the attending physician. The direct result of all this is that the employee's medical bills are more efficiently provided for."

The plaintiff in *Greenlee* incurred expenses from different providers, unknown to the employer, and it is this fact which distinguishes *Greenlee* from the case *sub judice*.

In *Bazner v. American States Ins. Co.*, 820 S.W.2d 742 (1991), the employer was directed to pay the plaintiff's expenses for treatment of asbestosis "though the date of the entry of this order". He thereafter incurred additional causally related medical expenses which the erstwhile employer was ordered to pay. Since the plaintiff did not consult with his employer before incurring these expenses, it was argued that *Greenlee* controlled the issue. While reaffirming the basic rationale of *Greenlee*, this Court recognized, as in *Greenlee*, that there are circumstances which relieve an employee from the requirement of prior notices.

We hold that in instances where the employee has engaged new or different healthcare providers the procedure addressed in *Greenlee* controls, but in instances where the post-judgment treatment is by the same healthcare provider, prior notice and hearing are not necessarily required.

■ There is a presumption that treatment furnished by designated physicians is necessary and reasonable, see: *Russell v. Genesco*, 651 S.W.2d 206 (1983), and we

think this principle is apropos here, even though Dr. Ellis was not "furnished" by the employer. Her engagement was approved by the employer, and this fact is *sufficiently operative as to bring it within the ambit of Russell.*

The judgment is accordingly modified to provide that the employer must provide future, free reasonably necessary medical, including chiropractic, treatment for the adjudicated injury to the employee.

In the event the plaintiff seeks the services of a different health provider, notice to the employer is required in accordance with T.C.A. § 50-6-204. But such notice is unnecessary if continuing chiropractic treatment by Dr. Ellis is physiologically required under the standard of necessity and reasonableness.

Affirmed as modified, with costs on appeal assessed evenly. The case is remanded to the trial court.

DROWOTA, J., and JOE C. LOSER, Jr., Special Judge, concur.