FILED

December 18, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:49 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE BY INTERCHANGE

| | | |
|---|---|---|
| Bryne Hill, | ) | **Docket No.: 2015-02-0197** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 49978-2014** |
| | ) | |
| **Cocke County Hwy. Dept.,** | ) | |
| **Employer.** | ) | **Judge Robert Durham** |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by the employee, Bryne Hill, on October 20, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the employer, Cocke County Highway Department (Cocke County), is obligated to provide additional medical benefits.

The dispositive issue is whether the law requires Mr. Hill to continue treating with Dr. Luke Madigan as his authorized treating physician. The Court finds the evidence submitted by Mr. Hill is sufficient to establish he is likely to prevail on the issue of receiving authorized medical care from Dr. Patrick Bolt at a hearing on the merits.[1]

### History of Claim

Mr. Hill is a thirty-nine-year-old resident of Cocke County, Tennessee who worked as a heavy equipment operator for the Cocke County Highway Department. (T.R. at 1.) Mr. Hill testified that on July 1, 2014, he attempted to dismount from his road grader when his foot, slippery from oil, slid off the back tire, causing him to fall to the ground five feet below. Mr. Hill felt immediate pain in his low back, which he reported to his supervisor. Tammy Holdway, administrative assistant for Cocke County, testified she provided Mr. Hill with a panel of authorized physicians from which he chose Dr. Michael Hood. (Ex. 7 at 1.)

---

[1] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

1

Mr. Hill saw Dr. Hood on the day of the accident, complaining of low back pain. (Ex. 1 at 151.) Dr. Hood diagnosed him with a low back sprain, recommended Advil and Tylenol, and took him off work for a week. (Ex. 1 at 148.) Dr. Hood did not recommend physical therapy. (Ex. 1 at 151.)

Mr. Hill returned to Dr. Hood on July 8, complaining of low back pain radiating into his legs. (Ex. 1 at 143.) Dr. Hood ordered an MRI to rule out a disc problem and prescribed Prednisone and Hydrocodone for pain relief. He also kept Mr. Hill off work for another two weeks. (Ex. 1 at 145.) Mr. Hill underwent the MRI on July 17. It revealed degenerative changes at L5-S1 without obvious nerve root impingement, as well as mild disc protrusions at L3-L4 and L4-L5, also without evidence of any impingement. (Ex. 1 at 152.)

Dr. Hood saw Mr. Hill again on July 22. (Ex. 1 at 140.) Mr. Hill told Dr. Hood the pain radiating from his back to his legs was the same, and the prescribed Prednisone aggravated a boil in his armpit. *Id.* Dr. Hood opined that the boils precluded the use of prednisone or epidural steroid injections. (Ex. 1 at 142.) He also opined surgery would not be helpful, and did not recommend any referrals, except for a second opinion if desired. *Id.* He prescribed conservative care, including muscle relaxers and NSAIDs, and stated it would probably take two months for the condition to resolve. *Id.* Mr. Hill testified Dr. Hood took him off work for another month.

Shortly before the July 22 appointment, Kathy Kinard, adjuster for Cocke County's insurer, retained Rhoe Saporito, R.N. to act as nurse case manager for Mr. Hill's claim. (Ex. 6 at 1.) On July 22, after Mr. Hill's appointment, Ms. Saporito contacted Dr. Hood to speak with him about Mr. Hill's condition. (Ex. 6 at 3.) According to her notes, Ms. Saporito, "questioned treatment and Dr. Hood indicated nothing and he can return in one month indicating it can take 2-3 months for MMI. Again, CM questioned treatment and RTW status, and Dr. Hood said he will evaluate at his follow-up appointment." *Id.* Ms. Saporito then contacted Ms. Kinard and relayed her conversation with Dr. Hood. Ms. Kinard asked Ms. Saporito to contact Dr. Hood again "with regards to treatment plan." *Id.*

The next day, Ms. Saporito contacted Dr. Hood's office again to discuss his treatment plan. (Ex. 6 at 4.) At the hearing, Ms. Saporito denied that she called to persuade Dr. Hood to order physical therapy, but stated she simply wanted him to clarify his treatment plan. According to her notes, she spoke to Dr. Hood after waiting for some time on the telephone, and he told her he felt physical therapy would be appropriate, but he did not think the carrier would approve it. *Id.* Ms. Saporito requested he send an order for therapy, and Dr. Hood complied. *Id.*

Mr. Hill underwent several physical therapy visits, but informed Ms. Saporito that he felt his pain increased following therapy. *Id.* at 6. On August 13, Ms. Saporito

2

informed Ms. Kinard that Mr. Hill claimed no improvement from physical therapy. *Id.* Ms. Kinard then "advised that Mr. Hill will be forwarded a panel in order to choose an orthopedic surgeon and he was not improving with therapy, then he can discontinue." *Id.* Ms. Kinard further instructed Ms. Saporito to try to schedule an appointment with the orthopedist by the following week. *Id.* Mr. Hill testified he received the panel of orthopedists from Ms. Holdway, but he did not choose right away because he wanted to do some research.

On August 15, Ms. Saporito talked with Mr. Hill, who advised her he received the panel, and, based on his research, he did not like any of the doctors on it. (Ex. 6 at 7.) Nevertheless, Mr. Hill told her he chose Dr. Patrick Bolt from the panel. *Id.* However, Mr. Hill continued to complain, stating he felt he should be able to choose his own physicians and that, since Dr. Hood did not originally prescribe physical therapy, he should not have to go. *Id.* Ms. Saporito informed him that if he did not feel therapy helped, he did not have to attend. *Id.* Mr. Hill also continued to complain of pain and asked for an appointment with Dr. Hood to refill his medication. *Id.* Ms. Saporito told him Ms. Kinard would have to authorize such an appointment. *Id.*

Later that day, Ms. Saporito contacted Dr. Bolt's secretary, who informed her that Dr. Bolt would not be available until October. Ms. Saporito then called Ms. Kinard, who told her she would "replace Dr. Bolt with another physician." *Id.* Ms. Saporito let Mr. Hill know, and he asked for the name of the adjuster because he did not feel he was being treated fairly, since he could not go to the doctor he had selected. (Ex. 3 at 8.)

On August 18, Mr. Hill signed a Choice of Physician form selecting Dr. Bolt as his authorized physician. (Ex. 7 at 7.) He also testified he called Dr. Bolt's secretary, who told him there were appointments available in August. He asserted that, when he told Ms. Saporito, she became upset. Ms. Saporito denied this, and testified she contacted Dr. Bolt's office through a conference call with Mr. Hill, and the nurse informed them those appointments were not for initial visits.

Later that day, Mr. Hill and Ms. Saporito visited Dr. Hood. Mr. Hill testified Ms. Saporito and Dr. Hood got into a heated discussion regarding the recommended treatment plan for Mr. Hill. Ms. Saporito agreed there was a discussion, but denied arguing with Dr. Hood. According to her notes, Dr. Hood "questioned" the decision to send Mr. Hill to an orthopedist, and stated he "may need to be seen by Dr. Harris for pain management/injections." (Ex. 6 at 10.) Dr. Hood noted in his records that, "the advisor with the patient tells me the history is that he is getting worse and the insurance company has decided to send him to a specialist since he is getting worse." (Ex. 3 at 137.) Dr. Hood further noted that, "the insurance company has decided to take this case out of my hands so I will sign off at this time. I have advised stopping PT since the patient says it is making to [sic] problem worse." (Ex. 3 at 139.)

3

On August 19, Ms. Saporito spoke with Ms. Kinard, who told her she was adding Dr. Edward Kahn to the panel. (Ex. 6 at 10.) Mr. Hill stated he wished to do some research before choosing. *Id.* In the meantime, Ms. Saporito attempted to obtain an earlier appointment with Dr. Bolt, but he wished to review the medical records before agreeing to see Mr. Hill. *Id.*

Mr. Hill testified that at some point, both Ms. Kinard and Ms. Saporito told him that if he did not sign the Choice of Physician form and treat with Dr. Madigan, he would lose his temporary disability benefits. He further testified he never wanted to see Dr. Madigan, and he would have been willing to wait to see Dr. Bolt.

According to Ms. Holdway's affidavit, "Mr. Hill was consistently complaining of pain. Therefore, when it was learned that an appointment could be obtained with Dr. Madigan sooner, he was offered a choice to change his authorized treating physician to Dr. Madigan." (Ex. 7 at 2.) Ms. Holdway then testified she called Mr. Hill to discuss it with him, and he agreed to see Dr. Madigan and sign a new panel. *Id.* However, he never did so. *Id.*

Mr. Hill and Ms. Saporito saw Dr. Madigan on September 2. Dr. Madigan diagnosed Mr. Hill with a lumbar muscle strain and trochanteric bursitis caused by the fall, and pre-existing spondylolisthesis. (Ex. 4 at 93.) He recommended four weeks of work hardening. *Id.* Following the appointment, Mr. Hill confirmed he never signed the second panel because he was not sure he wanted to treat with Dr. Madigan. (Ex. 6 at 14.) He asked Ms. Saporito if he could get a second opinion. *Id.*

Mr. Hill went through work hardening with little effect. (Ex. 3 at 95.) He returned to Dr. Madigan on October 2. *Id.* Dr. Madigan released him at maximum medical improvement with no restrictions and a one percent impairment. *Id.* Mr. Hill testified he did not seek any additional treatment from Dr. Madigan following this appointment. He further testified he made no attempt to see Dr. Bolt on his own. Mr. Hill returned to work for Cocke County until his termination in July 2015. He testified he still experiences back pain that radiates down his right leg, which limits his daily activities.

Mr. Hill filed a Petition for Benefit Determination seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Hill filed a Request for Expedited Hearing, and the Court heard the matter on December 9, 2015. At the Expedited Hearing, Mr. Hill asserted he never signed the second panel and he never voluntarily chose Dr. Madigan as his authorized physician; therefore, the law entitles him to treatment by Dr. Bolt. Cocke County countered that while Mr. Hill did not sign the second panel choosing Dr. Madigan as his authorized physician, he did voluntarily see him twice, thus making Dr. Madigan the authorized physician pursuant to Tennessee

4

Code Annotated section 50-6-204(a)(3)(D)(ii) (2014).

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[2] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014) requires an employer to provide an employee with "such medical and surgical treatment . . . made reasonably necessary by accident." In order to meet this requirement, the employer must begin by providing the employee with a panel of physicians from which the employee can choose a treating doctor. Tenn. Code Ann. § 50-6-204(a)(4)(A) (2014). The parties agree Cocke County provided a panel of physicians to Mr. Hill on the day of his accident, and he chose Dr. Hood as his authorized physician. (Ex. 7 at 1.)

Tennessee Code Annotated section 50-6-204(a)(3)(H) (2014) states: "[a]ny treatment recommended by a physician or chiropractor selected pursuant to this subdivision (a)(3) or by referral, if applicable, shall be presumed to be medically

---

[2] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

necessary for treatment of the injured employee." Therefore, the law obligates the employer to follow the treatment regimen recommended by the treating physician unless there is sufficient evidence to overcome the presumption that the treatment is reasonable and necessary. *Id.* Dr. Hood made it clear on July 22 that he felt Mr. Hill's condition was non-operable, and he recommended conservative care with over-the-counter pain relievers and NSAIDs and rest. (Ex. 1 at 143.) He took Mr. Hill off work for another month and specifically declined to make any additional referrals, stating it could take up to two months for Mr. Hill to recover. *Id.*

Ms. Kinard retained Ms. Saporito to act as nurse case manager. From the outset, Ms. Saporito, at the instruction of Ms. Kinard, repeatedly interfered with Dr. Hood's treatment of Mr. Hill. While Ms. Saporito vehemently denied she repeatedly called Dr. Hood to "get him" to order physical therapy, the Court finds it unlikely Dr. Hood would have done so at this stage without her persistent efforts, at the insistence of Ms. Kinard, to promulgate a "treatment plan." (Ex. 6 at 4.)

Ms. Kinard's interference with Dr. Hood's treatment did not end there. When Ms. Saporito advised her that Mr. Hill was making little progress in physical therapy, Ms. Kinard decided to provide him with a panel of orthopedists. (Ex. 6 at 6.) There is no evidence Mr. Hill requested an orthopedist or that Dr. Hood had recommended one. In fact, Dr. Hood argued with Ms. Saporito about the need for an orthopedist and noted, "the insurance company has decided to take this case out of my hands so I will sign off at this time." (Ex. 3 at 137.) The Court finds Dr. Hood did not voluntarily choose to end his treatment of Mr. Hill, nor did he agree with the decision to send him to an orthopedist. Ms. Kinard simply decided it was time to move Mr. Hill to another doctor as soon as possible, and directed Ms. Saporito to schedule an appointment for him by the following week. *Id.*

Mr. Hill eventually chose Dr. Bolt from the panel provided. (Ex. 6 at 7.) When Ms. Saporito discovered Dr. Bolt had no available appointments until October, she called Ms. Kinard, who told her she would "replace Dr. Bolt with another physician." *Id.* Mr. Hill became upset at this development because he could not go to the doctor he selected. (Ex. 3 at 8.) Furthermore, he still signed the original choice of physician form selecting Dr. Bolt, even though he knew Ms. Kinard planned to send him another panel. (Ex. 7 at 7.) Finally, Mr. Hill declined to sign the revised panel naming Dr. Madigan as his authorized physician because he was not sure he wanted to treat with him. (Ex. 6 at 14.)

The Court finds Mr. Hill did not want to make a choice from another panel. He testified he never chose Dr. Madigan as his treating physician, and he would have waited for an appointment with Dr. Bolt. Mr. Hill testified he only saw Dr. Madigan because Ms. Saporito and Ms. Kinard advised him his temporary disability benefits would be terminated if he refused. Ms. Saporito denied making such a statement; however, the Court finds Mr. Hill to be credible on this issue given the weight of corresponding

6

evidence.

The Court finds that on multiple occasions, Ms. Kinard unjustifiably abridged Mr. Hill's right to treatment from a physician duly selected from a panel in accordance with Tennessee Code Annotated section 50-6-204(a)(3) (2014). These violations began with her dissatisfaction with Dr. Hood's course of treatment and her unilateral decision to remove Mr. Hill from Dr. Hood's care, and culminated with her insistence that Mr. Hill treat with Dr. Madigan instead of Dr. Bolt.

In *Carter v. Shoney's, Inc.*, 845 S.W.2d 740, 741 (Tenn. 1992), the employer initially authorized the employee to seek chiropractic care, but later informed the chiropractor that it would no longer pay for her services. The trial court ordered the employer to continue paying for the employee's chiropractic treatment. *Id.* The Court found the employer obligated to pay for continuing chiropractic treatment, stating: "[t]he appellant essentially, and in hindsight, is seeking judicial absolution for its earlier asserted misjudgment in approving chiropractic treatment by Dr. Ellis. In the absence of evidence directed specifically to the issue we cannot arbitrarily order that chiropractic treatment be terminated." *Id.* at 742.

Thus, Ms. Kinard could not refuse Mr. Hill's selection of Dr. Bolt from the panel provided to him by her without Mr. Hill's consent. Perhaps it was "misjudgment" on her part to include Dr. Bolt on the panel without first checking as to his availability, but that is insufficient to require Mr. Hill to change the selection to which he is entitled pursuant to Tennessee Code Annotated section 50-6-204(a)(3). *Carter, supra,* at 742.

If Mr. Hill had voluntarily chosen to see Dr. Madigan, Cocke County would be correct in its assertion that Dr. Madigan would be the authorized physician despite the fact that Mr. Hill did not sign the second panel. Tenn. Code Ann. § 50-6-204(a)(3)(D)(ii) (2014). However, the Court finds Mr. Hill never wanted to see Dr. Madigan, and only agreed to do so because he feared Ms. Kinard would terminate his temporary disability benefits otherwise. Thus, the Court finds his actions did not "constitute acceptance" of Dr. Madigan as required by statute. *Id.* Therefore, Dr. Bolt remains Mr. Hill's authorized treating physician pursuant to Tennessee Code Annotated section 50-6-204(a)(3).

**IT IS, THEREFORE, ORDERED** as follows:

1. Dr. Patrick Bolt is designated as Mr. Hill's authorized treating physician for his work-related injury of July 1, 2014, and Cocke County shall pay for any reasonable and necessary treatment recommended by Dr. Bolt in accordance with Workers' Compensation Law. Should Dr. Bolt decline to treat Mr. Hill, Cocke County shall provide a panel of orthopedists from which Mr. Hill may select an authorized treating physician.

3. This matter is set for Initial Hearing on January 27, 2016, at 9:00 a.m. C.T, 10:00 a.m. E.T.

**ENTERED THIS THE 18th DAY OF DECEMBER, 2015.**

Robert V. Durham, Judge
**Court of Workers' Compensation Claims**

<u>**Initial Hearing**</u>:

**An Initial Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice

8

of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Medical records:
   Benchmark Rehab Partners;
   Knoxville Orthopedic Clinic;
   Knoxville Medical Center;
   Dr. Michael T. Hood;
2. Affidavit of Bryne Hill;
3. Affidavit of Tammy Holdway;
4. Affidavit of Rhoe Saporito, R.N.;
5. Initial Case Management Note;
6. Case Management notes; and,
7. Affidavit of Tammy Holdway with attachments.

Technical Record:

1. Petition for Benefit Determination;
2. Mr. Hill's Mediation Statement;
3. Cocke Co.'s Mediation Statement Reply;
4. Dispute Certification Notice;
5. Request for Expedited Hearing;
6. Transfer Order;
7. Cocke Co.'s Pre-Hearing Brief;
8. Cocke Co.'s Witness and Exhibit List; and,
9. Mr. Hill's Position Statement.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Medical Benefits was sent to the following recipients by the following methods of service on this the 18th day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| William Evans | | | X | Williamevansesq@gmail.com |
| Terri Bernal | | | X | TBernal@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov