

FILED
Sep 12, 2022
12:15 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Melanie Burns-Herrera | ) Docket No. 2021-06-0175 |
| | ) |
| v. | ) State File No. 107705-2019 |
| | ) |
| State Industries, LLC, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Kenneth M. Switzer, Chief Judge | ) |

---

### Affirmed and Remanded

---

The employee injured her right shoulder at work while lifting the shell of a water heater tank. After failing her initial conservative care, she was provided a panel of specialist physicians and underwent surgery but continued to complain of pain. The authorized physician diagnosed her with adhesive capsulitis due to the shoulder surgery. He advised the employee that her condition would improve with time, recommended no additional treatment, and placed her at maximum medical improvement. Thereafter, the employee sought a second opinion on her own regarding her condition and possible treatment, and that physician recommended surgery to address the adhesive capsulitis, which the employer declined to authorize. Following an expedited hearing during which both physicians' depositions were entered into evidence, the trial court found the authorized treating physician's medical opinion was not entitled to the statutory presumption of medical necessity. The court ordered that the employee be allowed to return to the authorized doctor for the recommended surgery, and should that doctor decline to perform it, the employer would be required to provide a new panel of physicians. The employee's request to have her chosen physician deemed the new authorized physician was denied. The employer has appealed. Upon careful consideration of the record, we affirm the trial court's order and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Lee Anne Murray and Taylor R. Pruitt, Nashville, Tennessee, for the employer-appellant, State Industries, LLC

Stephan D. Karr and Cindy E. Harris, Nashville, Tennessee, for the employee-appellee, Melanie Burns-Herrera

**Factual and Procedural Background**

At all times relevant to this matter, Melanie Burns-Herrera ("Employee") worked for State Industries, LLC ("Employer").[1] On October 15, 2019, she was lifting a 30-pound shell for a water heater tank when she felt a cramp in her right arm. After reporting the pain to her supervisor, Employee was evaluated at Employer's on-site clinic, where she was given ice and Biofreeze and told to return for physical therapy. During physical therapy, the therapist indicated Employee needed to have imaging of her shoulder completed.[2] Employer provided a panel of physicians, from which Employee selected Dr. Shannah Steele. Dr. Steele obtained an MRI in December 2019 and referred Employee to an orthopedic physician. Employer provided a panel of orthopedists, and Employee selected Dr. Jason Haslam.

Employee first saw Dr. Haslam in January 2020, at which time he diagnosed her with impingement syndrome in the right shoulder and provided a cortisone injection. She returned a month later, complaining of ongoing pain and frustration with her lack of improvement. Dr. Haslam performed a repeat injection and recommended a right shoulder arthroscopy with subacromial decompression, debridement, and possible rotator cuff repair. Dr. Haslam performed the surgery on March 24, 2020, identifying "a partial thickness rotator cuff tear involving the supraspinatus tendon," which "involved approximately 75% of the full-thickness of the supraspinatus tendon."

Following surgery, Employee returned to Dr. Haslam with what he recorded as "generalized improvement of her overall symptoms." He was pleased with the outcome of her surgery and placed her on limited work status with no use of her right arm. Dr. Haslam anticipated placing Employee at maximum medical improvement ("MMI") three months later. However, at an April 2020 appointment with Dr. Haslam, she reported "significant pain and discomfort" despite "participating in physical therapy with general improvement." He prescribed anti-inflammatory and pain medications, continued her work restrictions, and again indicated he anticipated placing Employee at MMI in three months. Employee continued to report no significant improvement at her May 2020 appointment, and Dr. Haslam noted a limited range of motion due to pain. He ordered additional physical therapy, modified her work restrictions, and indicated she would be at MMI in two months.

---

[1] In various documents contained in the record, Employer is referred to as "A.O. Smith." There is nothing in the record to indicate why Employer was later referred to as "State Industries, LLC." We use the name as reflected in the trial court's Expedited Hearing Order.

[2] The records from the clinic and the physical therapist are not contained in the record; however, Employee's testimony as to her initial treatment was unrefuted at the hearing.

Employee returned to Dr. Haslam in June 2020 and reported continued pain. Dr. Haslam stated that her "[p]ain at this point is somewhat normal given the operative intervention." He performed another injection during this visit and continued modified work restrictions. Employee returned to Dr. Haslam the next month and reported that she felt "like her symptoms were getting worse." She complained of pain and "ongoing stiffness" in the right shoulder. Dr. Haslam noted "significant pain at the end range of motion" on his exam and ultimately determined she was demonstrating evidence of adhesive capsulitis of the right shoulder.[3] He transitioned Employee from physical therapy to a home therapy program, prescribed pulleys for home exercises, and restricted her to lifting no greater than five pounds with no lifting above waist level.

Employee continued to report pain and stiffness at her August and September 2020 visits. At the September appointment, Dr. Haslam noted Employee remained "quite symptomatic" but provided a cortisone injection and released her at MMI. Dr. Haslam assigned permanent restrictions to Employee of no overhead use of the right arm, but all lifting restrictions were removed. He stated he had "no further treatment" to offer and would "see the patient back as needed." Dr. Haslam subsequently completed a Form C-30A Final Medical Report assigning a 7% impairment rating and marking that no further medical treatment was needed.

In October 2020, Employee returned to Dr. Haslam with continued pain and what she perceived as swelling in the right arm. Although Dr. Haslam did not see any significant swelling during his exam, he did provide another cortisone injection and stated, "I believe she should get a second opinion regarding possible treatment options."

In December 2020, Employee went to the walk-in clinic at Tennessee Orthopedic Alliance ("TOA"). She was initially seen by Dana Duff, a Certified Physician Assistant, who referred her for an MRI. After the MRI was completed, Employee returned to TOA and was seen by another physician assistant, Austin Bragdon. Both physician assistants agreed with the diagnosis of adhesive capsulitis, and Mr. Bragdon noted it was visible on the MRI. Mr. Bragdon indicated he could provide further conservative care, but she declined, indicating she would rather proceed with a surgical option. The recommended surgery consisted of an "extensive debridement, capsular release, possible distal clavicle resection, biceps tenodesis and surgeries as indicated."

Following these appointments, Employee returned to Dr. Haslam in January 2021. Dr. Haslam noted Employee had obtained "an outside second opinion which recommended surgical intervention" but repeated his belief that "she would not benefit from surgery."

---

[3] Adhesive capsulitis, also known as "frozen shoulder," can occur after periods of not moving the shoulder for some time, such as after an injury or surgery. *See* "Adhesive Capsulitis," https://www.mayoclinic.org/diseases-conditions/frozen-shoulder/symptoms-causes/syc-20372684 (last visited September 6, 2022).

He further stated that he had no further treatment to recommend. Dr. Haslam did not alter her MMI status or restrictions and again released her to be seen as needed.

In June 2021, Employee returned to TOA and was seen by Dr. Matthew Willis.[4] He agreed with the diagnosis of adhesive capsulitis and opined that it was "fairly clear that this is a direct result of her work-related injury and subsequent [rotator cuff repair] surgery." He discussed the possible surgical alternatives at that time, stating she had "failed very extensive conservative measures since her last procedure."

Dr. Willis was deposed on September 21, 2021. During his testimony, he confirmed that Employee initially saw two physician assistants in his practice who diagnosed Employee with adhesive capsulitis. Dr. Willis testified he trusted his staff and that "it's got to be pretty cut-and-dried, a very clear case for him to talk to a patient, recommend surgery without, you know, me seeing them ahead of time."

Dr. Willis testified he completed a questionnaire from Employee in May 2021, before he ever saw Employee personally, which stated the surgery was more than 50% related to work and was reasonable due to the failure of conservative care for her adhesive capsulitis. He testified he reviewed the medical records from Dr. Haslam and the subsequent MRI before completing the questionnaire. He further testified Dr. Haslam performed more injections than he likely would have before discussing surgery with Employee and that, as more than a year had passed with continued complaints despite therapy and injections, the capsular release was reasonable and necessary.[5] Following his deposition, Employee returned to Dr. Willis in January 2022, at which time he reiterated his willingness to perform surgery and his medical opinion that surgery was reasonable, necessary, and primarily caused by her initial October 2019 work injury.

Dr. Haslam was deposed on February 9, 2022. He testified that the diagnosis of adhesive capsulitis was primarily related to work, as it was a result of the authorized surgery in March 2020. He testified he generally did not recommend surgery for frozen shoulder, although he had operated on them "over and over and over again." He testified "the prognosis for frozen shoulder is good. If you do not do surgery, it's good. If you do surgery, it's pretty good." He testified he recommended "treat[ing] with time. It gets better." When asked how long the condition would last without surgery, he stated "bell-shaped curve, one and a half years." He further stated, "we can do surgery on it and you

---

[4] Dr. Willis had previously completed a causation questionnaire at Employee's request on May 11, 2021. Although he had not personally seen Employee at the time he completed the questionnaire, Dr. Willis answered in the affirmative to the question "[D]id the incident at work cause the injury to the right shoulder and her need for surgery by greater than 50% considering all causes?"

[5] He testified that the recommended bicep surgery was "probably" related but that the clavicle resection, relative to the arthritis of the AC joint, was not.

may get your range of motion faster, but you may have a lot of pain for a very long time." He went on to state:

> It may take another year and half for your pain to get better. Will you get better motion? Probably, because we're going to cut up the capsule, so yeah, you might get better motion. But I promise you, it's a painful operation.

At the expedited hearing, Employee testified she had continued to work for Employer in various positions consistent with her restrictions since the accident of October 2019. She testified that although she initially was happy with Dr. Haslam's treatment, she did not feel he listened to her about her ongoing pain. She testified she still had pain and wanted to proceed with the surgery, as she could no longer do some activities of daily living with her right arm.

Following the hearing, the trial court found that Dr. Haslam's recommendation not to undergo surgery to treat her work-related adhesive capsulitis was not entitled to the presumption of correctness described in Tennessee Code Annotated section 50-6-204(a)(3)(H). The court assigned greater weight to the opinion of Dr. Willis over that of Dr. Haslam and ordered Employer to authorize the surgery with Dr. Haslam. Although Employee asked that Dr. Willis be named her authorized treating physician, the trial court found that, under the circumstances, it had no authority to deem Dr. Willis the authorized physician. The trial court did, however, order Employer to provide a new panel of specialists to Employee if Dr. Haslam refused to provide the recommend surgeries. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). Moreover, a trial court has the discretion to determine which testimony to accept when presented with conflicting expert opinions, and we review such determinations using an abuse-of-discretion standard. *Johnston v. Siskin Steel & Supply Co.*, No. E2020-00799-SC-R3-WC, 2021 Tenn. LEXIS 241, at *30-31 (Tenn. Workers' Comp. Panel Feb. 10, 2021). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our

obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2021).

## Analysis

In its notice of appeal and brief, Employer raises three issues. We reorder and restate these issues as follows: (1) whether the trial court erred in ordering a surgery not recommended by the authorized treating physician; (2) whether the trial court abused its discretion by accepting Dr. Willis's opinion over that of the authorized physician; and (3) whether the trial court erred in conditionally ordering a new panel.

### *Presumption of Medical Necessity*

To consider whether the court erred in ordering Employer to authorize a surgery not recommended by the authorized treating physician, we must first address whether Dr. Haslam's recommendation not to have surgery is entitled to any type of presumption. Stated another way, we must consider whether a recommendation *not* to undergo treatment can be "presumed to be medically necessary." *See* Tenn. Code Ann. § 50-6-204(a)(3)(H). The presumption described in subsection 204(a)(3)(H) applies to "[a]ny *treatment* recommended by a physician . . . selected pursuant to subdivision (a)(3)." (Emphasis added.) In declining to apply this presumption in the present case, the trial court cited our decision in *Endsley v. Benchmark Contractors, LLC*. Although we explained in *Endsley* that the presumption attaches only to treatment recommended by the panel physician, our opinion in that case more specifically addressed whether the presumption of medical necessity applied to a panel physician's opinion about *another* physician's treatment recommendations:

> The statute provides that treatment recommended by an authorized doctor is presumed to be medically necessary, but makes no mention of whether an authorized physician's opinion about the medical necessity of treatment recommended by *another* doctor is entitled to that same presumption. Thus, by the express terms of this subsection, an opinion of one physician concerning treatment recommended by another physician does not qualify for the presumption described in subsection 204(a)(3)(H).

*Endsley v. Benchmark Contractors, LLC*, No. 2016-05-0743, 2017 TN Wrk. Comp App. Bd. LEXIS 47, at *7-8 (Tenn. Workers' Comp. App. Bd. Aug. 11, 2017).

In this case, Dr. Haslam offered no opinion on the reasonableness and necessity of the surgical treatment recommended by Dr. Willis. Rather, he simply stated that he would not recommend surgery in this case and had no treatment recommendation, other than stating, "[y]ou treat this with time." As such, the circumstances of the current case are

6

distinguishable from *Endsley*. Here, we conclude a statement by the authorized physician that he or she has no further treatment to offer is not, standing alone, "treatment" that is presumed to be medically necessary. Dr. Haslam made no treatment recommendation after placing Employee at MMI, stated he had no other treatment to offer Employee, and told her she could return to see him as needed. In essence, Dr. Haslam made no treatment recommendation to which the presumption of medical necessity could attach. Under these circumstances, we conclude Dr. Haslam's opinion is not entitled to the presumption described in subsection 204(a)(3)(H).[6]

*Weighing of Expert Opinions*

We next consider whether the court erred in determining the recommended surgery was reasonable and medically necessary to treat a compensable work injury. It is well-settled that a trial judge has the discretion to determine which opinion to accept when presented with conflicting expert opinions. *Bass v. The Home Depot U.S.A., Inc.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017). The court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Id.* We review such determinations under an abuse-of-discretion standard. *Moore v. Beacon Transport, LLC*, No. 2018-06-1503, 2021 TN Wrk. Comp. App. Bd. LEXIS 39, at *7 (Tenn. Workers' Comp. App. Bd. Oct. 29, 2021). A trial court abuses its discretion when it causes an injustice to the party challenging the decision by applying an incorrect legal standard, reaching an illogical or unreasonable decision, or basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009).

Dr. Haslam was questioned extensively regarding potential treatments for adhesive capsulitis in his deposition. He agreed that several treatments exist, including nonsteroidal inflammation medications, steroid injections, and physical therapy, all of which he had provided. He agreed that surgery was another treatment option, but he also stated that time itself was an acceptable treatment plan. Regarding the surgery as recommended by Dr. Willis, he testified as follows:

Q: [C]ertainly the capsular release is an appropriate . . . would be an appropriate treatment option, would that be correct?

A: That's the most common treatment that we surgically do for adhesive capsulitis.

---

[6] We do not intend to suggest that, under other circumstances, a plan for conservative care that includes a period of time for healing is not entitled to the presumption of medical necessity found in Tennessee Code Annotated section 50-6-204(a)(3)(H).

Q: And assuming . . . she doesn't have that, it's either medicine or live with the pain for the rest of her life, is that right?

A: No. I told you the prognosis is good, which means 95 percent of patients will recover without any long-terms deficits to their shoulder. The prognosis is good for frozen shoulder. That's why I recommend it. Don't do an operation. You treat this with time. It gets better.

Significantly, Dr. Haslam offered no testimony that the surgery recommended by Dr. Willis is not reasonable and necessary. In fact, he acknowledged that, while he did not "personally recommend it," Employee could seek to have another doctor perform the surgery if she desired.

In his deposition, Dr. Willis disagreed that Employee's adhesive capsulitis would continue to heal with time, stating "it's been more than a year . . . so at that point, you know, basically, it's either live with it or address it surgically in the form of a surgical release." He further clarified that "[a]bout a half a percent of people will get postoperative capsulitis that's so severe it requires a release, and she just happened, unfortunately, to fall in that category." Dr. Willis testified that Employee's prognosis was good relative to the recommended surgery.

The court considered the deposition testimony of both doctors in light of the factors listed in *Bass*, and it concluded Drs. Haslam and Willis are equally qualified. The court also determined that although Dr. Haslam had seen Employee more times than Dr. Willis, the doctors were equally well-positioned to provide an opinion regarding the necessity of surgery. Finally, the court noted that both doctors agreed that different conclusions could reasonably be reached by different physicians regarding whether the recommended surgery was the best treatment plan. After reaching these conclusions regarding the medical testimony, the court turned to the lay testimony of Employee.

It is well-settled that courts can consider the testimony of a lay witness when analyzing issues regarding medical treatment. *See Caskey v. Powers Pizza, LLC*, No. 2015-04-0038, 2015 TN Wrk. Comp. App. Bd. LEXIS 37, at *9 (Tenn. Workers' Comp. App. Bd. Oct. 7, 2015). "[A]n employee's assessment as to his or her own physical condition is competent testimony that is not to be disregarded." *Limberakis v. Pro-Tech Sec., Inc.*, No. 2016-08-1288, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Tenn. Workers' Comp. App. Bd. Sept. 12, 2017). Here, the trial court considered Employee's testimony that she could no longer participate in some activities of daily living and that she could not enjoy some of her hobbies. Employee had complied with the conservative treatment provided to her with no improvement in her symptoms, and she has continued working for Employer in various positions despite her ongoing symptoms. She obtained a second opinion on the recommendation of Dr. Haslam. At the time of the hearing, it had been over two years since the initial surgery, exceeding the typical 18-month window for recovery discussed

8

by Dr. Haslam in his deposition. Considering her testimony, the surgical recommendation of Dr. Willis, and no countervailing recommendations for reasonable and necessary medical treatment by Dr. Haslam, the court ordered Employer to authorize the surgery. Based on our review of the expert depositions and witness testimony, we conclude the trial court did not abuse its discretion in accepting Dr. Willis's opinion over that of Dr. Haslam's.

*Conditional Order for a New Panel*

Although the court ordered Employer to authorize the requested medical treatment, it denied Employee's request to have Dr. Willis named the authorized treating physician in place of Dr. Haslam. Employee did not appeal that portion of the order, although she did request that Dr. Willis be deemed the authorized physician in her brief on appeal. However, the record is clear that Dr. Haslam was duly selected from a panel, provided significant treatment, and has not refused to see Employee at any time. Employee has provided no support for the proposition that a trial court has the authority to order the replacement of the authorized physician with another of her choosing under these circumstances. We, therefore, affirm the trial court's order in that regard.

The court did, however, order Employer to allow Employee to return to Dr. Haslam to see if he is willing to perform the surgery. If he declines, Employer must offer Employee a new panel of specialists. Employee argues the court has authority to order a new panel pursuant to Tennessee Code Annotated section 50-6-204(g)(2)(B). We agree with Employer that Employee's reliance on that portion of the statute is misplaced. Under the plain language of that subsection, it only applies only in cases where a "judgment or decree" has already been entered by the workers' compensation judge through settlement or compensation hearing. Tenn. Code Ann. § 50-6-204(g)(2)(B). Nevertheless, we affirm the court's authority to order a new panel should Dr. Haslam refuse to provide reasonable and necessary medical treatment. The duties of a trial judge are set out in section 50-6-238(a)(3) as follows:

> It shall be the duty of a workers' compensation judge to hear and determine claims for compensation, to approve settlements of claims for compensation, to conduct hearings, and to make orders, decisions, and determinations.

Under subsection 204(a)(1)(A), an employer is obligated to provide medical and surgical treatment made "reasonably necessary" by the accident. We previously determined a treating physician's refusal to continue to see an employee can trigger an employer's obligation to issue a new panel to ensure an employee receives "reasonably necessary" medical treatment as required by the statute. *See, e.g.*, *Limberakis v. Pro-Tech Sec., Inc.*, No. 2016-08-1288, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Tenn. Workers' Comp. App. Bd. Sept. 12, 2017) (citing *Carter v. Shoney's, Inc.*, 845 S.W.2d 740, 742-44 (Tenn. 1992)). However, we have also determined that, in circumstances

9

where the treating physician remained willing and able to see the employee, the employer was not obligated to provide a new panel even though the employee was dissatisfied with the treatment. *Baker v. Electrolux*, No. 2017-06-0070, 2017 TN Wrk. Comp. App. Bd. LEXIS 65, at *8-9 (Tenn. Workers' Comp. App. Bd. Oct. 20, 2017). Here, Dr. Haslam has indicated he remains willing to see Employee, but he has also indicated he does not recommend treatment the trial court has determined to be reasonable and medically necessary. Thus, if Dr. Haslam declines to provide the reasonable and necessary medical treatment ordered by the trial court, Employer must provide a new panel in order to fulfill its obligations under section 50-6-204(a)(1)(A).

## Conclusion

For the foregoing reasons, we affirm the trial court's order in all aspects and remand for any further proceedings that may be necessary. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Melanie Burns-Herrera | ) | Docket No. 2021-06-0175 |
| | ) | |
| v. | ) | State File No. 107705-2019 |
| | ) | |
| State Industries, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 12th day of September, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Lee Anne Murray<br>Taylor R. Pruitt | | | | X | leeamurray@feeneymurray.com<br>trp@feeneymurray.com |
| Stephan D. Karr<br>Cindy E. Harris | | | | X | steve@flexerlaw.com<br>cindy@flexerlaw.com |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of<br>Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov